UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                              Plaintiff

v.                                                              Criminal Action No. 3:17CR-00119-RGJ-1

JIHAD HAQQ                                                                            Defendant

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendant Jihad Haqq's Motion to Suppress and Motion for Ruling on Defendant's Motion to Suppress. [DE 17, Def.'s Mot. to Suppress; DE 31, Def.'s Mot. for Ruling]. Defendant filed a Motion to Suppress on December 18, 2017. [DE 17]. Plaintiff, the United States of America, filed a response to the Motion to Suppress on January 2, 2018, [DE 23, Pl.'s Resp. Mot. to Suppress], and a Reply was filed on January 17, 2018. [DE 19, Def's Reply to Resp. to Mot. to Suppress]. Defendant filed a Supplement to the Reply to the Motion to Suppress on January 18, 2018, asserting that the United States failed to respond to certain arguments. [DE 21, Def.'s Suppl. To the Reply to the Mot. to Suppress]. On February 6, 2018, United States Magistrate Judge Dave Whalin granted the United States fourteen days to respond to those arguments, [DE 22, Order], and the United States filed a Supplemental Response to the Motion to Suppress on February 20, 2018. [DE 23, Pl.'s Suppl. Resp. to Mot. to Suppress].

On February 21, 2018, Magistrate Judge Whalin granted an evidentiary hearing on the limited issue of the voluntariness of Mr. Haqq's statements to law enforcement under *Miranda*. [DE 24]. The hearing was held on May 10, 2018. [DE 28]. The parties subsequently agreed that the statements which were the subject of the hearing would be excluded. [DE 29]. Then, on May 21, 2018, Defendant filed a Supplement to his Motion to Suppress. [DE 30, Def.'s Suppl. Mot. to

1

Suppress]. On June 22, 2018, Defendant moved for a ruling on the remaining issues in his Motion to Suppress. [DE 31, Def.'s Mot. for Ruling]. On July 9, 2018, Magistrate Judge Whalin issued a Findings of Fact, Conclusions of Law, and Recommendation ("R&R") on the remaining issues, recommending that the Motion to Suppress be denied. [DE 32]. Objections were timely filed by Defendant. [DE 33]. These matters are now ripe for adjudication.

For the reasons set forth below, the Court **DENIES** Defendant's Motion for Ruling on Defendant's Motion to Suppress as **MOOT** [DE 31], **OVERRULES** Defendant's Objections [DE 33], and **ACCEPTS** Magistrate Judge Whalin's R&R with modification [DE 32].

## I. FACTUAL AND PROCEDURAL BACKGROUND

These facts, not objected to, are taken from the R&R. On April 26, 2017, Sergeant Thomas Schardein of the Louisville Metro Police Department sought, and received, a warrant to search 6725 Strawberry Lane, Louisville (the "Strawberry Lane Residence"). [DE18-2]. That warrant, and Sergeant Schardein's six-page affidavit in support of that warrant, set forth the following information garnered through law enforcement's investigation.

On April 14, 2017, Gayle Hayes was interviewed by Oldham County Police Department ("OCPD") officers in connection with the suspected heroin overdose of Peyton Schutte, a friend of Ms. Hayes. [DE 18-2, at 5]. Ms. Hayes reported that she had purchased heroin from a male named "TC" twice on March 11, 2017, the day prior to Ms. Schutte's overdose, and that on the second occurrence, she and Ms. Schutte had used the heroin from TC together. [*Id.*] At that interview, Ms. Hayes identified the Strawberry Lane Residence as the possible residence of TC. [*Id.*]

Following the interview, OCPD officers executed a search warrant on Ms. Hayes's telephone, which showed five phone calls and six text messages with "TC" at 502.975.4541; the

text messages appeared to concern heroin sales. An investigation identified Jihad A. Haqq, who was known to go by "TC" and "Tom-Cat," as possibly living at the Strawberry Lane Residence.

On April 19, 2017, Sergeant Schardein met with Ms. Hayes, who, when told that he was investigating TC, responded "Oh my drug dealer." [*Id.*, at 7]. Ms. Hayes identified a photo of Mr. Haqq as TC and provided information about him, including that she had been purchasing heroin from him for approximately three years and that she had followed TC after deals and observed him going to the Strawberry Lane Residence. [*Id.*] Ms. Hayes recounted that she had never known him to sell narcotics from that location and that he told her he specifically avoided conducting narcotics-related business at home to avoid detection by law enforcement. [*Id.*] Ms. Hayes further told officers that TC had been operating a green pick-up truck while selling her heroin, and that she had seen this vehicle at 6725 Strawberry Lane. [*Id.*]

An OCPD investigation then determined that two businesses were registered to Mr. Haqq at the Strawberry Lane Residence, as well as five vehicles, including a green 1997 Dodge Truck, which officers had visually identified at the property on April 17, 2017. [*Id.*, at 9]. Finally, through a subpoena of Mr. Haqq's telephone records, Sergeant Schardein determined that Mr. Haqq had been in frequent contact with telephone numbers used by individuals who either trafficked in, or overdosed on, narcotics. Specifically, Mr. Haqq's number was used 375 times to contact an individual known to have overdosed several times, 279 times to contact another individual known to have overdosed, 81 times to contact a third individual known to have overdosed, and 54 times to contact a fourth individual, who at the time of the affidavit had pending charges for trafficking in controlled substances. [*Id.*]

On April 26 2017, Sergeant Schardein sought, and received, a warrant to search the Strawberry Lane Residence for illegal narcotics, cellular telephones, "which may show contact

with the potential co-defendants . . . or the victim," other cellular telephone or electronic devices used to conduct illegal activities, proceeds of drug trafficking, guns used in drug trafficking, and records of drug trafficking.[1] [DE 18-2].

The search warrant was executed on April 27, 2017, and on September 6, 2017, Mr. Haqq was indicted for the distribution of fentanyl resulting in death, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). [DE 1]. Mr. Haqq moved to suppress evidence found at the Strawberry Lane Residence on the grounds that the affidavit attached to the warrant application did not provide probable cause to issue the warrant. [DE 17; DE 28].

## II. OBJECTIONS

Mr. Haqq objects to both the R&R's factual findings and legal analysis. Mr. Haqq objects to the R&R's factual findings on grounds that it omits certain facts Mr. Haqq believes are relevant to the suppression motion. Mr. Haqq then objects to the legal analysis and conclusions, asserting four errors in the R&R. First, Mr. Haqq objects to the finding that the search warrant was supported by probable cause. Second, Mr. Haqq argues that the affidavit failed to establish a nexus between the evidence sought in the warrant and the place to be searched—in this case, the Strawberry Lane Residence. Third, Mr. Haqq objects to Magistrate's classification and treatment of Mr. Haqq's Supplement to the Motion to Suppress as a reply brief. Finally, Mr. Haqq objects to the Magistrate's finding that, even absent probable cause to search the Strawberry Lane Residence, the *Leon* good faith exception to the exclusionary rule applies.

### A. Standard Of Review.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b)(1), a district court may refer a motion to suppress to a magistrate judge to conduct an evidentiary

---

[1] Mr. Haqq has not challenged the scope of the warrant.

4

hearing, if necessary, and submit proposed findings of fact and recommendations for the disposition of the motion. This Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. *Id.* Moreover, the Court need not review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no specific objection is made. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). Rather, the Court may adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Id.* at 151.

**B. Mr. Haqq's Objection To The Finding of Facts Contained In The R&R.**

Mr. Haqq objects to the omission of the following facts contained in the warrant affidavit: (1) "that the number attributed to 'TC' by Hayes is registered in the name of 'Thomas JONES'" [DN 18-2, at 6]; (2) that a search of the Schutte residence by OCPD recovered "[a] cellophane baggie with residue from HAYES' hooded sweat shirt" [*Id.*]; and (3) that "during her interview at the Louisville Metro Department of Corrections with Sgt. Schardein, Hayes described how ''TC' double bags the heroin' that he sells" [*Id.*, at 7]. [DE 33 (alteration in original)].

Having reviewed the warrant affidavit, this Court finds that the warrant affidavit does contain this information. The Court finds that these material facts were not part of the Magistrate's proposed findings of fact and that these facts are important to the Court's *de novo* analysis of the objections presented. Therefore, good cause exists to modify the R&R to include these facts. The inclusion of such facts, while considered as part of the Court's *de novo* analysis, does not change outcome of the probable cause finding below.

5

### C. Mr. Haqq's Objections to the Legal Analysis and Conclusions.

#### a. Objection to the conclusion that the search warrant was supported by probable cause.

Mr. Haqq objects the Magistrate's finding that "the search warrant affidavit in this case is supported by probable cause." [DE 32, at 8]. Specifically, he objects to the characterization of Ms. Hayes as an eyewitness, as opposed to an informant, deserving of a higher level of scrutiny. Additionally, Mr. Haqq objects to the finding that the likelihood that a cell phone used by Mr. Haqq would be found in his residence supported probable cause to search the residence.

i. Standard.

"Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, ... reasonableness generally requires the obtaining of a judicial warrant." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) *petition for cert. filed* (May 23, 2018) (No. 17-1598). Under the Fourth Amendment, a search warrant may be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the ... things to be seized." U.S. Const. amend. IV.

Probable cause exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996) (quoting *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975)). "The Fourth Amendment does not require probable cause to believe evidence will conclusively establish a fact before permitting a search, but only 'probable cause . . . to believe that the evidence sought will aid in a particular apprehension or conviction.'" *Messerschmidt v. Millender*, 565 U.S. 535, 552 n.7 (2012) (alteration in original) (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)). Moreover, probable cause exists where an affidavit in support of a search warrant

shows "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir.1990)). An "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

A warrant issuing judge "may rely on hearsay evidence provided by an informant when considering whether probable cause exists to issue a warrant." *United States v. Howard*, 632 F. App'x 795, 798 (6th Cir. 2015) (citing *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). When doing so, the warrant-issuing judge should consider the informant's reliability and the basis of the informant's knowledge as relevant considerations when determining whether there is probable cause to issue a warrant. *See, e.g.*, *Gates*, 462 U.S. at 233.

Statements from a source specifically identified by name in a warrant application are generally considered sufficient to establish probable cause without further corroboration because the legal consequences of making a false statement to law enforcement tend to ensure reliability. *See, e.g.*, *United States v. Hodge*, 714 F.3d 380, 384–85 (6th Cir. 2013); *United States v. Williams*, 544 F.3d 683, 690 (6th Cir.2008) ("the warrant here named the informants, and named informants, unlike confidential informants, require little corroboration"). Another indicium of reliability is "corroboration of the tip through the officer's independent investigative work." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Importantly, Sixth Circuit "precedent does not require independent corroboration of *criminal* activity . . . [c]orroboration of specific nonobvious information that, although innocent on its own, meshes with an informant's tips is similarly relevant." *United States v. Hines*, 885 F.3d 919, 925 (6th Cir. 2018) (emphasis in original).

7

An informant's basis of knowledge is "the particular means by which an informant obtained his information." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999). "In assessing an informant's 'basis of knowledge,' the degree of detail contained in a tip may be used to infer whether the informant had a reliable basis for making his statements [and an] explicit and detailed description of the alleged wrongdoing allows a magistrate to 'reasonably infer that the informant had gained his information in a reliable way.'" *Id.* (quoting *Spinelli v. United States*, 393 U.S. 410, 417 (1969)).

When evaluating the underlying merits of a motion to suppress, the responsibility of a reviewing court is simply to ensure that the warrant-issuing judge "had a 'substantial basis' for concluding that probable cause existed." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 238–39). When reviewing that determination, this court should give "great deference" to the warrant issuing judge's determination of probable cause and "reverse that decision only if it was arbitrarily made." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009). When determining whether probable cause existed for the issuing of a warrant, a reviewing court is to eschew an "excessively technical dissection of . . . isolated issues" and instead examine the "totality of the circumstances" contained with the warrant affidavit. *Illinois v. Gates*, 462 U.S. 213, 234–35 (1983).

      ii. Analysis.

The affidavit at issue provides Ms. Hayes' own eyewitness evidence of purchases of heroin directly from Mr. Haqq. Ms. Hayes was able to identify Mr. Haqq in a photograph and stated that she had been purchasing heroin from him for about three years and that she had followed him to his residence at 6725 Strawberry Lane immediately following drug deals. Ms. Hayes was able to locate the house on a google map. Ms. Hayes also described a green pick-up truck that Mr. Haqq

drives, in which Mr. Haqq has sold her heroin, and which she has seen parked outside of the Strawberry Lane residence. Ms. Hayes also described Mr. Haqq's lawn care business and stated that Mr. Haqq frequently used rental vehicles.

Mr. Haqq takes issue with the Magistrate's comparison to the unpublished opinion of *United States v. Goward*, 188 F.App'x 355 (6th Cir.. 2006), which the Magistrate refers to as addressing "factual circumstances very similar to Haqq's" in reference to whether drugs would be found in the defendant's residence. [DE 32, at 7; DE 33, at 96]. In *Goward,* the Court found sufficient probable cause for the issuance of a warrant to search a defendant's home where it was supported, among other things, by "a number of controlled purchases of marijuana" with the cooperation of an informant. *Goward*, 188 F.App'x, at 356. Mr. Haqq asserts that nothing of this level of controlled buys or cooperation with law enforcement exists in this case and further asserts that "the level of scrutiny applied to any *illicit activity* described by Hayes as an eyewitness is uncorroborated. There are no controlled buys. There is no surveillance of illegal activity." [DE 33 at 96]. Therefore, Mr. Haqq objects to the insufficient level of scrutiny afforded Hayes when she is characterized as an "eyewitness" as opposed to her role as an informant.

First, as to the reliability and scrutiny given to the Ms. Hayes' information, the Court finds that the Magistrate gave Mr. Hayes' information appropriate scrutiny and properly determined that the reliability of the information provided in the affidavit was sufficient to establish probable cause. Ms. Hayes was both an eyewitness and an informant regarding the alleged criminal activity. The information that Ms. Hayes supplied to Sergeant Schardein regarding Mr. Haqq's alleged activity is extensive and detailed both as to the illicit activity at issue and as to other details regarding Mr. Haqq, his property and his behavior.

Moreover, Sergeant Schardein also corroborated much of the information Ms. Hayes provided, including "specific nonobvious information that, although innocent on its own, meshes with an informant's tips" and serves to support the reliability of the informant's information as a whole. *Hines*, 885 F.3d at 925. Sergeant Schardein corroborated Ms. Hayes' communications with Mr. Haqq regarding heroin, Mr. Haqq's address and visual appearance of the property, the fact that Mr. Haqq drove a green pickup truck, and Mr. Haqq's frequent use of rental vehicles. Finally, Ms. Hayes was a source specifically identified by name in the warrant application, and thus, her information is generally considered sufficient to establish probable cause without further corroboration because the legal consequences of making a false statement to law enforcement help to ensure reliability. *Hodge*, 714 F.3d at 384–85; [DE 18-2].

Additionally, Ms. Hayes stated that she had followed Mr. Haqq to his residence at 6725 Strawberry Lane immediately following drug deals. Ms. Hayes was able to locate the house on a google map and describe and identify the 1997 green Dodge truck, which Mr. Haqq drove during those drug deals, that was confirmed to be registered to Mr. Haqq at the Strawberry Lane Residence. Law enforcement conducted a thorough investigation, which corroborated Ms. Hayes' statements that Mr. Haqq was a known drug dealer who conducted drug activity near his home. *See United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009) (citing *United States v. Frazier*, 423 F.3d 526, 532-33 (6th Cir. 2005)). While "a defendant's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in defendant's home," *Frazier*, 423F.3d at 533, "there is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home." *Berry*, 565 F.3d at 339 (citing *Frazier*, 423 F.3d at 532-33); *United States v. Blair*, 214 F.3d 690,

696 (6th Cir. 2000). Based on these principles, the search warrant affidavit in this case is supported by probable cause.

Mr. Haqq next argues that, because "phone records, including details of text messages, had already been obtained by subpoena," the likelihood that his cellular telephone would be found at the Strawberry Lane Residence was irrelevant to the determination that there was probable cause to search that residence. [DE 33]. Mr. Haqq, however, fails to cite to any cases suggesting that the cumulative or redundant nature of the evidence sought at a location would serve to reduce or eliminate probable cause to search that location.

Regardless, officers had confirmed that the number Ms. Hayes identified as belonging to Mr. Haqq was used to contact her concerning heroin sales, as well as used to contact several other individuals associated with the heroin trade. As noted above, Ms. Hayes stated that Mr. Haqq had returned to the Strawberry Lane Residence after the drug deals. At the very least, it was reasonable to believe that Haqq returned to the Strawberry Lane Residence with the proceeds of the sale, which constituted evidence of the offense, along with his cell phone, an instrumentality of the offense. Because the Court can reasonably infer, in these circumstances, that Haqq, a narcotics trafficker, kept evidence of such crime in his residence, the Magistrate properly found that the affidavit was supported by probable cause. *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005)("in the case of drug dealers, evidence is likely to be found where the dealers reside."); *United States v. Miggins*, 302 F.3d 384, 394 (6th Cir. 2002) (citing cases from the First, Second, Fourth, Seventh, Ninth, and D.C. Circuits supporting the proposition that evidence of drug trafficking is likely to be found in the residence of the drug dealer). As such, Defendant's objection is OVERRULED.

### b. Objection to the Finding of a Nexus between the Evidence Sought and the Place to be Searched.

Mr. Haqq next objects to Magistrate Judge Whalin's conclusion that the affidavit established a nexus between the alleged crime and the Strawberry Lane Residence. Mr. Haqq states that "[f]or the reasons previously stated in the Defendant's Motion to Suppress [DN 17], the defendant objects to the Magistrate's finding that the warrant affidavit established a nexus between the allegations of drug dealing and Mr. Haqq's residence." Mr. Haqq then cites case law that "the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence." *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005). No specific objection is stated.

Mr. Haqq's general objection on this issue "is the same as no objection." *United States v. Gwathney-Law*, No. 1:15-CR-00030-GNS, 2017 WL 1128643, at *1 (W.D. Ky. Mar. 24, 2017). The Sixth Circuit has made clear that "a general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991)).

An "objection ... that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg v. Berryhill*, No. 16-11736, 2017 WL 4296604, at *1 (E.D. Mich. Sept. 28, 2017). Therefore, Mr. Haqq's general objection and reference back to the arguments already made in his Motion to Suppress is insufficient to qualify as an objection. As such, the Court will not conduct a *de novo* review of the

Magistrate Judge's report with regard to Mr. Haqq's second argument.[2] *Ells v. Colvin*, No. 3:16-CV-00604-TBR, 2018 WL 1513674, at *2 (W.D. Ky. Mar. 27, 2018).

### c. Mr. Haqq's Objection to the Treatment of his Supplement as a Reply Brief.

Mr. Haqq filed a supplement to his Motion to Suppress, which Magistrate Judge Whalin ruled that he would not consider because: (1) it raised "grounds that were not raised in [Mr. Haqq's] original motion to suppress;" and (2) Mr. Haqq "submitted no evidence in support of the bare allegations he outlined in this supplement." [DE 30; DE 32].

On May 10, 2018, Magistrate Judge Whalin held a hearing regarding Mr. Haqq's claim that he had not validly waived his *Miranda* rights. At that hearing, the parties indicated to the Court that an agreement has been reached as to the *Miranda* issue. [DE 28]. Additionally, as stated in the Magistrate's May 14, 2018 Order, "[t]he parties also presented an agreement for an extended briefing schedule for the remaining issues in Defendant's Motion to Suppress." [*Id.*]. The Order further stated that "Defendant will have seven (7) days from entry of this Order to file any supplement to its Motion to Suppress [DN 17], and once such supplement is filed, the United States will have seven (7) days to file a response." [DE 28].

Mr. Haqq filed a Supplement to His Motion to Suppress on May 21, 2018. [DN 30]. The Supplement asserted that the signature on the warrant in this case differs from the signature appearing on the warrant provided by law enforcement in a civil action concerning the manner in which the Strawberry Lane Residence warrant was executed. It further asserts that the civil suit alleges that officers refused to show the warrant to the resident who was home at the time the warrant was executed. Mr. Haqq appears to argue that these facts establish that the warrant in this

---

[2] Even if the Court were to consider the merits of Mr. Haqq's objection on this issue and conduct a *de novo* review regarding the nexus, the R&R is well-reasoned on this issue. After considering the arguments of the parties, the Magistrate Judge properly concluded that a proper nexus existed and that Defendant's motion should be denied.

record was not in existence at the time of its supposed execution.  Mr. Haqq did not, however, append the other warrant to his supplement, move for a further evidentiary hearing, or explain why the apparent discrepancy would warrant suppression.  None of these issues were filed in his original Motion to Suppress.

The May 14, 2018 Order, specifically related to a briefing schedule "for the **remaining issues** in Defendant's Motion to Suppress."  [DE 28 (emphasis added)].  It neither requested nor allowed for the addition of new or unraised issues.  As such, the Magistrate Judge treated the brief as a reply which raised new issues for review and not a supplement regarding issues already raising and remaining to be ruled on. "As a matter of litigation fairness and procedure," this Court treats issues raised in reply briefs as forfeited. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). Additionally, "[c]onclusory allegations, speculation, and unsubstantiated assertions are not evidence." *Gooden v. City of Memphis Police Dept.*, 67 F. App'x 893, 895 (6th Cir. 2003).

As the issues set forth in the May 21, 2018 filing were new and not a supplement to the issues already raised in Mr. Haqq's original motion, the Magistrate properly declined to consider the new issues.  Moreover, Mr. Haqq also failed to provide this Court with sufficient evidence to evaluate the argument on its merits, as the Supplement contained nothing beyond mere averment. In the event that discovery in his civil matter produces evidence Mr. Haqq believes to be sufficiently probative of the constitutionality of the search of the Strawberry Lane Residence, he may move this court for leave to file a second motion to suppress pursuant to Fed. R. Crim. Pro. 12(c)(3).  *See United States v. Walden*, 625 F.3d 961, 964–66 (6th Cir. 1010).  As such, Defendant's objection is OVERRULED.

> ***d.* If the Warrant Affidavit Did Not Support the Finding of Probable Cause, the *Leon* Good Faith Exception Applies.**

Finally, Mr. Haqq objects to the Magistrate's conclusion that even in the absence of probable cause, the *Leon* good faith exception applies. Mr. Haqq states that

> [t]he defendant, for the reasons previously stated in Defendant's Motion to Suppress [DN 17, at p. 3], objects to the finding of the Magistrate that, even absent probable cause to support the search warrant, "the search would have still been proper under the *Leon* good-faith exception because of the 'minimally sufficient nexus' established in the affidavit between Haqq's drug trafficking and his residence." *Citing United States v. Leon*, 468 U.S. 897, 905 (1984).

[DE 33, at 99]. No further specific objection is stated.

As stated previous, an "objection ... that merely reiterates arguments previously presented, does not adequately identify alleged errors on the part of the magistrate judge." *Altyg*, No. 16-11736, 2017 WL 4296604, at *1. Therefore, Mr. Haqq's general objection and reference back to the arguments already made in his Motion to Suppress is insufficient to qualify as an objection. As such, the Court will not conduct a *de novo* review of the Magistrate Judge's report with regard to Mr. Haqq's final argument.[3] *Ells*, No. 3:16-CV-00604-TBR, 2018 WL 1513674, at *2.

## III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The **Report** and **Recommendation** of the United States Magistrate Judge, [DE 32], is **ACCEPTED with modification** consistent with this opinion;

(2) Defendant's Objections, [DE 33], are **OVERRULED** as set forth herein;

(3) Defendant's Motion to Suppress, [DE 17], is **DENIED**;

(4) Defendant's Motion to Rule, [DE 31], is **DENIED as moot**;

---

[3] Even if the Court were to consider the merits of Mr. Haqq's objection on this issue and conduct a *de novo* review regarding the Leon Good Faith Exception, the R&R is well-reasoned on this issue.

(5)     The time period between the filing of Defendant's Motion to Suppress on December 18, 2017, and this Order, is **excluded** from the provisions of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D); and

(6)     This matter is scheduled for a **Status Conference** on **October 4, 2018, at 10:30 a.m.** The Defendant shall be present for the conference and the parties shall be prepared to schedule the case for trial at that time.